UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

MARK IV INDUSTRIES, INC.,

        Appellant,

- against -

NEW MEXICO ENVIRONMENT
DEPARTMENT, and CHANT FAMILY
II LIMITED PARTNERSHIP,

        Appellees,

- and -

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

        Intervenor.

------------------------------------------------------- X

**OPINION AND ORDER**

11 Civ. 648 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    **INTRODUCTION**

        Mark IV Industries, Inc. ("Mark IV") seeks to appeal the decision of the Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), which held that Mark IV's environmental cleanup obligation was not a dischargeable "claim" under the Bankruptcy Code. Mark IV moves for this Court to certify a direct appeal to the United States Court of Appeals for the Second

1

Circuit (the "Second Circuit") pursuant to section 158(d)(2)(A) of Title 28 of the United States Code. The New Mexico Environment Department ("NMED"), Chant Family II Limited Partnership ("Chant"), and the United States Environmental Protection Agency ("EPA") oppose the motion. For the reasons set forth below, Mark IV's motion for direct appeal is denied.

## II. BACKGROUND

In April 2009, Mark IV filed for Chapter 11 bankruptcy in the Bankruptcy Court, which led to the confirmation of a plan of reorganization that provided for the discharge of all "claims" against Mark IV arising before such confirmation.[1] In October 2009, Mark IV initiated an adversarial proceeding against the NMED seeking a declaratory judgment that its obligation to clean up a property located in Albuquerque, New Mexico (the "Site") is a "claim" under the Bankruptcy Code, and therefore, dischargeable.[2] Mark IV's cleanup obligation arose from its acquisition of Gulton Industries, Inc., which had previously owned and operated the Site.[3] Chant, the current owner of the Site, and the EPA intervened in the adversarial proceeding in support of the NMED's opposition to

---

[1] *See* Mark IV's Memorandum of Law in Support of Its Motion for Certification for Direct Appeal ("Mark IV Mem.") at 2.

[2] *See id.* at 2-3.

[3] *See id.* at 2.

the discharge of Mark IV's cleanup obligation.[4]

The Bankruptcy Court ruled that Mark IV's cleanup obligation is not a "claim" under the Bankruptcy Code.[5] In reaching this decision, the Bankruptcy Court relied on *In re Chateaugay Corp.*,[6] where the Second Circuit analyzed the circumstances under which an environmental cleanup obligation can be a dischargeable "claim" under the Bankruptcy Code.[7]

Mark IV seeks to appeal the Bankruptcy Court's decision and asks this Court to certify a direct appeal to the Second Circuit, pursuant to section 158(d)(2)(A), arguing that there is no controlling decision in this circuit governing the issues on appeal, that the appeal involves a matter of public importance, and that an immediate appeal would materially advance the progress of the case. The NMED, Chant, and the EPA oppose a direct appeal, arguing that none of the grounds for direct appeal is satisfied.

## III. LEGAL STANDARD

### A. Section 158(d)(2)(A)

---

[4] *See id.* at 2-3.

[5] *See* The EPA's Memorandum of Law in Opposition to Mark IV's Motion for Certification for Direct Appeal ("EPA Mem.") at 3.

[6] 944 F.2d 997 (2d Cir. 1991).

[7] *See* EPA Mem. at 2-3.

Section 158(d)(2)(A) provides grounds for a district court to certify appeal of a bankruptcy court's decision directly to the court of appeals where:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision . . . or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case.

Upon certification, the court of appeals may "in its discretion exercise, or decline to exercise, that jurisdiction."[8] The Second Circuit has instructed that direct appeal is appropriate for cases involving "question[s] of law not heavily dependent on the particular facts of a case[.]"[9] The Second Circuit will be "reluctant to accept cases for direct appeal when [ ] percolation through the district court would cast more light on the issue and facilitate a wise and well-informed decision."[10]

## IV. APPLICABLE LAW

### A. Existence of Controlling Decision

In the Second Circuit, *Chateaugay* controls the circumstances under which injunctive remedies can be dischargeable "claims" under the Bankruptcy

---

[8] *Weber v. United States Tr.*, 484 F.3d 154, 157 (2d Cir. 2007).

[9] *Id.* at 158.

[10] *Id.* at 161.

Code.[11] The Second Circuit defined a "claim" to include an "equitable remedy for breach of performance if such breach gives rise to a right to payment[,]" and held that a cleanup order from an environmental enforcement agency such as the EPA is a "claim" if the enforcement agency has the option "to do the cleanup work itself and sue for response costs, thereby converting the injunction into a monetary obligation."[12] But "where there is no right to such payment for cleanup or other remedial costs, claims for injunctive relief are not dischargeable."[13]

## B. Matter of Public Importance

Public importance exists when the matter on appeal "transcend[s] the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case."[14] "An appeal that impacts only the parties, and not the public at large, is not a matter of public

---

[11] *See Chateaugay*, 944 F.2d at 1006-08.

[12] *Id.* at 1007-08 (citation and quotation marks omitted).

[13] *Id.* at 1008 (citation and quotation marks omitted).

[14] *In re Am. Home Mortgage Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009) (citation and quotation marks omitted). *Accord In re Nortel Networks Corp.*, No. 09-10138, 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010); *In re General Motors Corp.*, 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009). Because the Bankruptcy Code does not define what constitutes a matter of public importance and there is a dearth of case law in this jurisdiction interpreting this basis for direct appeal, I find these cases instructive as persuasive authority.

importance."[15]

## C. Advancement of the Case

A direct appeal may materially advance the case where the bankruptcy court's decision is manifestly correct or manifestly incorrect, such that a court of appeals can expeditiously decide the issues and a district court's review would be less useful.[16] Speed should not necessarily be privileged over other goals, such as resolving matters wisely.[17] "Moreover, since district courts tend to resolve bankruptcy appeals faster than the courts of appeals . . . the cost in speed of permitting district court review will likely be small."[18]

## V. DISCUSSION

### A. Existence of Controlling Decision

Mark IV argues that no controlling decision exists in this circuit defining when an environmental cleanup order can be a dischargeable "claim" under the Bankruptcy Code.[19] However, the Second Circuit addressed this inquiry

---

[15] *In re Nortel Networks Corp.*, 2010 WL 1172642, at *2 (citation and quotation marks omitted).

[16] *See Weber*, 484 F.3d at 161.

[17] *See id.* at 160.

[18] *Id.*

[19] *See* Mark IV Mem. at 6.

6

in *Chateaugay*, where it held that an environmental cleanup obligation can be a "claim" if the enforcement agency has the option, under the statute on which it relies, to do the cleanup work itself and sue for the costs. If the statute does not confer such a right to payment, the injunction is not a dischargeable "claim."

The issues in this appeal center around whether Mark IV's cleanup obligation is a "claim." The New Mexico Water Quality Act ("WQA"), on which the NMED relied, does not provide the NMED the option to do the clean up and sue Mark IV for the costs.[20] On this basis, the Bankruptcy Court decided that Mark IV's cleanup obligation was not a "claim."[21] Although the parties dispute the correctness of the Bankruptcy Court's decision on the merits, *Chateaugay* is nevertheless a controlling decision in this circuit governing the issues on appeal.

Mark IV argues that *Chateaugay* does not govern based on three grounds, all of which lack merit. *First*, Mark IV argues that even if the WQA does not provide the NMED with the option to do the clean up and sue for the costs, another statute available to the NMED might allow that option.[22] However, irrespective of whether another statute could provide the NMED with a right to

---

[20] *See* EPA Mem. at 3.

[21] *See id.*; Mark IV Mem. Ex. B ("Bankruptcy Court Decision") at 16, 19.

[22] *See* Mark IV Mem. at 6.

payment, the test is still whether that statute gives the NMED the option to do the cleanup and sue for the costs. Therefore, *Chateaugay* still applies. Moreover, even if *Chateaugay* were susceptible to several interpretations, the Second Circuit has instructed that in "cases involving unsettled areas of bankruptcy law, review by the district court would be most helpful[,]" and hence, the district court should attempt to resolve such questions before certifying a direct appeal.[23]

*Second*, Mark IV argues that *Chateaugay* does not address the dischargeability of a cleanup order owed by an entity that does not own or operate the polluted site at the time of the bankruptcy proceedings.[24] However, as the Bankruptcy Court noted in its decision, *Chateaugay* suggests that ownership is not dispositive, but rather, an entity's access to a polluted site is key because access gives the entity the ability to comply with the cleanup order.[25] Moreover, Mark IV's access to the Site and ability to comply with the cleanup order involve mixed questions of law and fact, rather than pure questions of law appropriate for a direct appeal.

*Third*, Mark IV argues that *Chateaugay* does not define the meaning

---

[23] *Weber*, 484 F.3d at 160.

[24] *See* Mark IV Mem. at 7.

[25] *See Chateaugay*, 944 F.2d at 1008-09; Bankruptcy Court Decision at 13, 15-16.

of "ongoing pollution."[26] Whether ongoing pollution exists is an inquiry that is "heavily dependent on the particular facts of a case" and not appropriate for direct appeal.[27]

### B. Matter of Public Importance

Mark IV argues that this appeal involves a matter of public importance, namely, a debtor's ability to discharge its environmental cleanup obligation and get a "fresh start" through bankruptcy proceedings.[28] Mark IV points to two other bankruptcy proceedings that allegedly involved the same issues on appeal here.[29] Aside from pointing to these two proceedings, Mark IV does not explain how the resolution of the issues on appeal would advance the development of the law to an unusual degree, or impact the public at large. Therefore, direct appeal is not appropriate on the basis that this appeal involves a matter of public importance.

### C. Advancement of the Case

Mark IV argues that a direct appeal would materially advance the

---

[26] See Mark IV Mem. at 7-8.

[27] Weber, 484 F.3d at 158.

[28] Mark IV Mem. at 9.

[29] See id. at 8-9.

9

progress of its case because it cannot make distributions to its creditors until it determines which claims are dischargeable.[30] The NMED argues that a direct appeal may delay the case because should the Second Circuit decline to hear the direct appeal, this case will be back in this Court after lost time.[31] The EPA also points out that the Second Circuit has recognized that "district courts tend to resolve bankruptcy appeals faster than the courts of appeals[.]"[32] This appeal involves a bankruptcy court's decision that is neither manifestly correct nor manifestly incorrect, and indeed, the parties dispute the correctness of the Bankruptcy Court's decision.[33] Any cost to speed in permitting district court review will likely be outweighed by the benefit of such review on casting light on the issues and facilitating a wise and well-informed decision. Therefore, direct appeal is not appropriate on the basis that immediate appeal may materially advance the progress of the case.

## VI. CONCLUSION

For the foregoing reasons, Mark IV's motion for certification for

---

[30] *See id.* at 11.

[31] *See* The NMED's Memorandum of Law in Opposition to Mark IV's Motion for Certification for Direct Appeal ("NMED Mem.") at 13-14.

[32] *Weber*, 484 F.3d at 160; EPA Mem. at 11.

[33] *See* EPA Mem. at 11.

direct appeal to the Second Circuit is denied. The Clerk of the Court is directed to close this motion (Docket # 3).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         April 12, 2011

- **Appearances** -

**For Appellant:**

Don Joaquin Frost, Jr., Esq.
Elizabeth Ann Malone, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue N.W.
Washington, District of Columbia 20005
(202) 371-7422
(202) 371-7239

J. Eric Ivester, Esq.
Jay Michael Goffman, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square, 42nd Floor
New York, New York 10036
(212) 735-3000

**For Appellees:**

Charles de Saillan
Special Assistant Attorney General
New Mexico Environment Department
Office of General Counsel
Post Office Box 5469
Santa Fe, New Mexico 87502
(505) 827-2985

David T. Thuma, Esq.
500 Marquette NW, Suite 650
Albuquerque, New Mexico 87102
(505) 766-9272

**For Intervenor:**

Daniel P. Filor
Alicia M. Simmons

Assistant United States Attorneys
United States Attorney's Office, Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2697